PETERS (UNITED STATES v.). See Case No. 16,035.

## Case No. 11,034.

PETERS et al. v. WARREN INS. CO.

[1 Story, 463.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1840.

COLLISION WITH FOREIGN VESSEL — INEVITABLE CASUALTY—GENERAL AVERAGE—APPORTIONMENT —SALVAGE — INSURANCE — PARTIAL LOSS UNDER FIVE PER CENTUM—BOTTOMRY.

1. Where a loss occurs by an accidental collision with a foreign vessel, which by the law of the country, where it takes place, is to be borne and apportioned between the vessels, as being by inevitable casualty, it is not by our law deemed a general average.

[Cited in Emery v. Huntington, 109 Mass. 437.]

2. The mere fact, that an apportionment is made of a loss between the different parties in interest, if the loss itself does not arise from some act done, or sacrifice or expense voluntarily incurred for the common benefit, does not necessarily make it a case of general average by our law.

[Cited in Annan v. The Star of Hope, Case No. 405; The Queen of the Pacific, 18 Fed. 701.]

3. Although salvage is often in the nature of a general average, it is not universally true, that, in the sense of our law, all salvage charges are to be deemed a general average; they are only so, when incurred for the benefit of all concerned.

[Cited in The Queen of the Pacific, 18 Fed. 701.]

4. The items included and the sums apportioned and paid, according to the law of a foreign country, as a general average in an adjustment thereof, made there, (and a fortiori, if enforced by the tribunals there) are quoad the items and the rule of apportionment conclusive upon and payable by the underwriters here, as a general average, although not apportioned in the same manner, and not deemed items of general average by our law.

5. By the Boston policies of insurance no partial loss on a ship under five per cent, is to be borne by the underwriters. Assuming, that a loss by such an accidental collision, sustained by the ship insured, is a partial loss, and less than five per cent.; yet if the sum apportioned on her, on account of the injury to the other vessel, together with her own loss, exceeds five per cent., the underwriters are liable for the whole loss borne and apportioned on her.

6. Under the circumstances of the present case, it was held, that the loss by the collision was an entirety, and the whole damage assessed upon, and payable by the Paragon, was a direct damage or partial loss, occasioned by the collision, and the items were not to be separated.

7. Where a bottomry bond, executed at Hamburg, was given at a premium of twelve and a half per cent., and the bottomry holder agreed to give it up, if the sum advanced and common

interest were promptly paid, and the agent of the bottomry holder received a draft from the owners on Hamburg for the amount, and common interest, and charged a commission for indorsing the draft, and the bond was thus taken up; it was held, that the underwriters were liable for the interest and commission, and bound to pay them as a part of the loss, since they thereby obtained the benefit of the surrender of the twelve and a half per cent. premium; and they were not entitled to the benefit without partaking of the burthen.

8. One of the owners, who transacted the business, and gave the draft, and took up the bottomry bond, as agent for all the owners, was not entitled to claim against the underwriters any commission on his disbursements, or for his services.

This cause was formerly before this court, and the report thereof will be found in Peters v. Warren Ins. Co. [Case No. 11,035]. It now came again before the court at this term, upon exceptions filed to the report of the auditor, to whom it had been referred to ascertain and adjust the loss, which the plaintiffs were entitled to recover. The exceptions were as follows: The defendants object to the report of the insurance broker, William Hales, Esq., to whom the case was referred. (1) We object to the amount of partial loss, and the proportion thereunto belonging, of the general expenses at Hamburg, on the ground, that by itself it would not amount to five per cent. (2) We object to Hechscher's charge for indorsing Mr. Peters' draft, $46.44. (3) We object to the charge of the interest included in Parish's account with Peters, which runs to the 26th of May, 1837; when the loss occurred November, 1836, and was demanded January 31st, 1837, and payable March 31st, 1837. The plaintiffs filed the following exception: The plaintiff excepts to so much of the report as disallows the charge for a commission.

F. C. Loring, for plaintiff.

The argument for the plaintiffs was as follows: The first objection is, to what is called the partial loss, not amounting to five per cent. The answer is, that there was no partial loss; that, by the laws of Hamburg, the whole damage in cases of collision is a general average loss; and that in the present case the damage to the Paragon was as much general average, as that to the Franca Anna. This appears conclusively by the statement of facts, which embodies a part of the despacheur's adjustment in the following words: "That is, the Paragon, her cargo and freight was to bear one half of the expense of her own repairs, and to pay one half of the value of the Galliot, &c." And the adjustment concludes as follows; "which sum" (meaning one half of the expenses of repairs and loss of the Galliot,) "is to be borne by ship, cargo, and freight, as general average." The answer to the second objection, and in part to the third, is drawn from what appears in the auditor's report, and a letter therein referred to, and is as follows. The owners having no funds at Hamburg, the master was necessitated to raise the funds to pay the amount of the gen-

[1] [Reported by William W. Story, Esq.]

eral average, payable by the ship on bottomry. Parish & Co. furnished the funds· at the premium of twelve and a half per centum. They, however, wrote to their correspondents in New York, Hechsher & Co., that they did not intend to exact the premium, if the amount advanced, with all charges, was promptly paid, and the owners should secure it by effecting a policy of insurance on ship or freight, and assigning it to Hechsber & Co. for that purpose. The plaintiff, on receiving this intelligence, requested the defendants to furnish funds to pay the bond; they declined to do so; and he then made arrangements to, and did furnish the funds, by which the bond was paid, and the premium of twelve and a half per cent. saved to the insurers. The expenses incurred in so doing seem to be equitably, if not legally, a charge on the insurers, as they derive the sole benefit therefrom; and in fact, they seem to come within the provision in the policy, that the insurers will contribute towards all expenses incurred in and about the recovery of the property. The items excepted to are actual cash payments made by the plaintiff for this purpose. The payment was made in the usual course, by remitting bills of exchange. The charge for indorsing is a usual and customary one, which the plaintiff was obliged to pay. because Hechsher & Co. were instructed to claim the whole premium if any delay or objection occurred. The interest, objected to, was actually paid by the plaintiff; and he does not, as it would appear, receive, nor does the office pay double interest. The usual sight of bills remitted is sixty days. Parish & Co. would, therefore, charge interest, till the bills matured and were collected; and the plaintiff was obliged to remit enough to cover the amount due, when the bills should mature; which he did. If he had purchased bills, payable at sight, this charge of interest would not appear, but the same amount would be charged in another shape, because the bills would have cost more. If, on the refusal of the defendants to furnish funds, the plaintiff had elected to pay the bond and premium, he certainly could have recovered it. By taking the course he did, a considerable saving was effected, of which the defendants have the entire benefit, and should therefore pay all the expenses actually and necessarily incurred for that purpose. The same remarks will apply to the charge for the insurance to secure the bond, which the auditor has left "in the mud," but which the defendants have not excepted to. And for the same reasons, the plaintiff considers himself entitled to charge a commission for his services, time, and trouble in effecting the arrangement, as for a service rendered to the defendants; in which light it is hoped the court will consider it.

T. Parsons, for insurance company.

The argument for the defendants was as follows: The exception to the "partial loss" rests on this ground. The vessel lost a cable and anchor, &c. This loss was certainly a partial loss by our law, and did not amount to five per cent. We understand the law of the case to be, not that a foreign adjustment determines for us, what is a general average; but that a foreign adjustment of what is truly, and by our law a general average, is binding on us. By the opinion of the court in this case, it will be seen, that it stands on a very different footing from general average. As to the bottomry bond, Peters was permitted to take this up for less than its face, and whatever sum he actually was obliged to pay in so doing, we acknowledge ourselves liable for, but no farther. Now, we, the defendants, had at that time (by the case) a policy on the ship, which we should of course have readily transferred to Hechsher & Co., and thus the premium on the new policy would have been saved. Similar remarks apply to the charge for insurance, made by the plaintiffs, which the auditor has not allowed, and which the plaintiff now claims. The auditor states the facts fully in his report, and it seems to us clear, that he was right in not allowing it.

STORY, Circuit Justice. The first exception is founded upon the clause in the policy (which is the common clause in the Boston policies), that the underwriters shall not be liable "for any partial loss on other goods on the vessel, or on freight, unless it amount to five per cent., exclusive in each case, of all charges and expenses incurred for the purpose of ascertaining and proving the loss; but the owners of such goods shall recover on a general average." The argument in support of the exception seems to rest on the ground, that the damage done the Paragon itself was a partial loss only, less than 5 per cent.; and that it is not of the nature of a general average. In the opinion already expressed in this case, when it was formerly in judgment, I strongly inclined to think, that the loss by the collision was not to be deemed a general average in the sense of our law, although it was apportioned upon both the vessels. Peters v. Warren Ins. Co. [Case No. 11,035]. General average is commonly understood to arise from some voluntary act done, or sacrifice, or expense incurred, for the benefit of all concerned in the voyage, or adventure; and then it is apportioned upon all the interests, which partake of the benefit. But the mere fact, that an apportionment is made of a loss between the different parties in interest, if the loss itself does not arise from some act done, or sacrifice or expense voluntarily incurred, for the common benefit, does not make it necessarily a case of general average by our law. Salvage is properly a charge, apportionable upon all the interests and property at risk in the voyage, which derive any benefit therefrom. But, although it is often in the nature of a general average, it is far from being universally true, that, in the sense of our law, all salvage charges are

to be deemed a general average. On the contrary, these charges are sometimes a simple average, or partial loss. We must, therefore, look to the particular circumstances of the case to ascertain, whether it be the one, or the other. So, expenses incurred on capture are sometimes a general average, and sometimes not. Thus, if the expenses are incurred for the benefit of all concerned, they are a general average. But, if there should be a capture of a neutral ship, solely on account of the cargo, which is owned by different persons, who are shippers, if no proceedings are had against the ship, but are against the cargo only, the expenses occasioned thereby will be apportioned upon the owners of the cargo, and are but a partial loss thereof, and not a general average; for such expenses are not for the benefit of the ship or freight, which, therefore, do not contribute thereto. See 2 Phil. Ins. (2d Ed., 1840) pp. 71–74, c. 15, § 1; Id. p. 125, § 5; Id. p. 225, c. 16, § 3; Benecke & S. Average (by Phillips, Ed. 1833) pp. 101, 102, 139–141.

It has been said, in the argument for the plaintiff, that, whether this claim be a general average, or not, by our law, it is clearly a general average by the law of Hamburg; and that the foreign law must furnish the rule for the case under such circumstances. And in support of the argument reliance is placed upon the language of the adjustment of the despacheur, who states, that the Paragon, her cargo, and freight, are to bear one half of the expense of her own repairs, and to pay one half of the value of the Galliot; and the adjustment concludes by saying, that this sum (the one half) is to be borne by the ship, cargo, and freight, as "general average." The argument certainly has considerable apparent weight. It is met, on the other side, by the suggestion, that what constitutes general average must be decided by our law, since the contract and its language must be interpreted by the laws of the place of the contract; and that when a case of general average under our law has arisen, then the foreign adjustment thereof may be conclusive of the amount of such general average; but it is not otherwise. But this argument does not solve the whole difficulty. The real question is, whether the underwriters, by the terms of the policy respecting general average, mean such losses and expenses only, as are deemed general average by our law, or such losses and expenses, as arise in the course of the voyage, from any of the perils insured against, and are assessed upon and payable by the insured, as a general average under and in virtue of any foreign law. Now, the contract of insurance is a contract of indemnity against risks and losses by the perils insured against, not only in the home port, and on the ocean, but also in foreign ports. It naturally, therefore, looks to general averages, which may be incurred and enforced abroad, as well as at home. If by a peril, insured against, the insured is compelled in a foreign port, by the local law, to pay a sum as general average, which, by the law of his own country would not be so, why may not such a loss or charge be properly deemed a general average in the sense of the policy? What difference in principle is there between deciding, that items or apportionments included in a foreign adjustment of a general average, although not belonging to a general average, or a proper apportionment, by the law of our own country, are, nevertheless, to be here paid for as a general average, and deciding that a loss, not a general average by our law, but a general average by the foreign law, and enforced there, is to be deemed and paid for here as a general average? In each case the loss, sought to be recovered, is, pro tanto, not a general average according to our law; and the principle, which is to govern, must be the same, whether the loss be greater or less, whether it apply to the totality of the claims, or to any item thereof. Now, certainly the weight of authority, both in England and America is, that the items included and the sums apportioned and paid according to the law of a foreign country, as a general average, in an adjustment thereof, made there, (and, a fortiori, if enforced by the public tribunals there,) are, quoad the items and the rule of apportionment, conclusive upon and payable by the underwriters here, as a general average, although not apportioned in the same manner, and not deemed items of general average by our law. This is certainly the doctrine in Simonds v. White, 2 Barn & C. 805; Loring v. Neptune Ins. Co., 20 Pick. 411; Strong v. New York Fireman Ins. Co., 11 Johns. 323; and Depau v. Ocean Ins. Co., 5 Cow. 63. The most important case the other way is Shiff v. Louisiana State Ins. Co., 6 Mart. [N. S.] 629. But there is great difficulty in holding, that this case ought to overcome the rule established in Simonds v. White, 2 Barn. & C. 805, which puts the doctrine upon grounds of public convenience and policy, and the apparent intention of the parties. There is nothing unreasonable in construing the engagement of the underwriters in a policy to be, that they will pay, whatever the insured is compelled to pay as a general average, arising from the risks insured against. But I wish to be understood as not absolutely deciding this point, and it is the less necessary to consider it, because, assuming the sum claimed not to be a general average, it is nevertheless, as a partial loss, to be borne by the underwriters. The infirmity of the argument for the exception consists in separating the loss, incurred by the damage done to the Paragon itself, from the damage done to the other vessel, which was apportioned on the Paragon, and in considering them as independent losses Now, they are not so separable. The loss by the collision was an entirety; and the whole damage assessed upon, and payable by the Paragon, was a direct damage or partial loss, occasioned by the col-

lision, and the items are not to be separated. The whole loss was a charge in rem upon the Paragon; and the collision was the proximate cause thereof. This was the doctrine entertained by the supreme court, upon the hearing of this cause upon the writ of error. Peters v. Warren Ins. Co., 14 Pet. [39 U. S.] 99. We must treat the loss, then, as an aggregate partial loss, composed of two items, the one the direct damage done to the Paragon, the other the direct damage done to the other vessel, and assessed and charged upon the Paragon. These items, when united, far exceed 5 per cent. This exception is, therefore, overruled.

The next exception turns upon a very different consideration. It seems, that a bottomry bond was given to defray the amount of the sum awarded against the Paragon and charges; and that the bottomry holder was willing to waive the 12½ per cent. interest payable upon the bond, if he was promptly paid the amount, and certain other conditions were complied with. The agent of the bottomry holder at New York received from Mr. Peters, (one of the plaintiffs,) a draft on Hamburg for the amount, and charged a commission for indorsing that draft to his principal, and thereby becoming a guarantor of the draft. The bottomry bond was thus taken up; and a less sum than the 12½ per cent. was actually paid to the agent. The charge of this commission is now objected to. But I think it is without any just ground. If the underwriters seek to avail themselves of a diminished payment of interest upon the bottomry bond, they must take it cum onere. Mr. Peters acted with entire good faith in this part of the transaction; and it has been for the benefit of the underwriters. The charge seems to me entirely reasonable and proper in itself; and the underwriters have no just cause to complain, that a less sum has been paid upon the bond, than might have been required under its terms. If they adopt Mr. Peter's agency in taking up the bond, they must adopt it throughout. If they do not adopt it, they ought to pay the whole 12½ per cent. bottomry interest due on the bond. I therefore overrule this exception also.

The same considerations will apply to the third exception. The interest, therein objected to, was a part of the agreement, upon which the payment of the 12½ per cent. was surrendered by the bondholder. And besides; it is in itself most reasonable, that the bondholder should be paid the interest upon his advances, not merely up to the time, when the draft was received, but up to the time, when it would arrive at maturity, and be paid.

As to the exception by the plaintiff of the disallowance by the auditor of the claim of Mr. Peters for a commission, for settling and paying the bottomry bond; it appears to me, that it was rightly rejected by the auditor for the reason stated by him. It was the primary duty of the plaintiffs to pay the bottomry

bond, in order to entitle themselves to recover the amount thereof from the underwriters. If the owner pays money to repair damages to his ship, he is not entitled to claim from the underwriters any commission on his disbursements; and the present case is not distinguishable from that in principle.

On the whole, my judgment is, that the report ought to be confirmed.