HALL & LINDLEY *v.* THE RISING SUN INSURANCE COMPANY.

1. Where a policy of insurance against the perils of the river, etc., is issued on merchandize, with a proviso that the insurers shall not be liable, except in cases of general average, for any loss or damage, unless it amount to *twenty per cent.* on the aggregate value of such property; and in case a loss occurs, the injury or damage to the property itself not amounting to twenty per cent. of the sum insured, then in estimating the loss, the expenses incurred for rescuing the property, restoring it to its former condition, loading and unloading, costs of protest, etc., may be added to the damage or injury done the property itself; and if the aggre-

gate of all these is equal to twenty per cent. of the risk, the insurer may recover of the underwriters.

2. The insured has indemnity not alone from sea or river-damage to his property, by a peril of the sea or river, but from loss sustained by reason of a peril, however that loss may arise, whether by taking or destroying part of the property to save the residue, or expending money therefor.

3. A charge for salvage is rather in the nature of a direct loss than of a mere charge to bring forward the property.

4· The word *loss*, or *average*, in the clause is not confined to *sea-damages*, but extends to charges fixed upon the property by reason of the accident itself.

SPECIAL TERM.—Action upon a policy of insurance.

The facts of the case sufficiently appear in the decision.

*Fox & French*, for plaintiffs.

*Lincoln, Smith & Warnock*, for defendant.

SPENCER, J. The petition states that a policy of insurance was executed by defendant, insuring the sum of $1,740 on one hundred and forty-five tons of hay, shipped on a flat-boat from Vevay, Indiana, to New Orleans, valued at $12 per ton, against loss arising from the perils of the river, etc.; that the boat ran aground at or near Paducah, and resisted all efforts to get her off; that a boat had to be procured to lighten her off, by taking out the hay; that while so engaged, the flatboat broke up, and was entirely destroyed; that the hay was all saved at considerable expense, in a damaged condition, except two bales, which were entirely lost; that the policy contained a clause prohibiting the insured from disposing of the hay at the place of disaster, but required the insured to cause it to be forthwith forwarded to the port of destination, which was done at an increased freight; that expenses were incurred in unloading and loading, etc.; and in ascertaining the amount of damage done, all set forth in a schedule, for which indemnity is asked.

The answer admits the policy and loss, in accordance with

an agreed statement of facts, and protest accompanying, but does not pretend that the boat was unseaworthy.

The facts show a loss within the perils insured against; and as there is no claim of unseaworthiness set up in the answer, we can not find it under the mere inference which may arise from the fact set forth in the protest.

The only question we are called upon to determine is, whether such a loss has been sustained as can be compensated under the terms of the policy. It reads as follows: "Touching the perils, etc., they are of the rivers, jettisons, enemies, and overpowering thieves; provided that the insurers shall not be liable, except in cases of general average, for any loss or damage on hoop or sheet iron, etc., hay, hops, fruit, etc., salt, hides, etc., unless it amount to twenty per cent. on the aggregate value of such articles; nor for loss or damage on flax, etc., unless it amount to ten per cent· on the whole value at risk, exclusive of all charges and expenses incurred for the purpose of ascertaining and proving the loss."

When property is partially damaged by any of the perils insured against, the mode of ascertaining a loss is to compare the damaged sales with the sound sales, at the port of destination, and whatever the difference may be, is the ratio or proportion of loss taken upon the sound sales. In the present case it is shown, by the agreed statement of facts, that the market price of sound hay, at New Orleans, was $21.50 per ton, equal to $3,117.50, while the gross damaged sales were $2,795.96, showing a loss of $321.54 on $3,117.50, equal to $179.47 on $1,740, the value of the hay, or a trifle over ten per cent. Unless, therefore, some other charge can be added to this, the loss does not fall within the policy.

The plaintiffs claim to charge, as part of the loss, an item of $176, being the sum paid the "Tom Scott" for towing flatboat to the rescue of the hay, and for the use of the flat, in making the rescue. This, added to the former item, makes the loss amount to twenty per cent. on the value of the property, provided it can be properly so added under this memorandum clause in the policy.

It seems remarkable that in determining a question which must have been of frequent occurrence under the memorandum article, in use for more than a century, no adjudicated case can be found on the subject, to furnish a proper guide as to what losses shall be taken into account in making up the requisite per centage of damage, so as to justify a claim under the policy; and, so far as elementary treatises, by standard writers, upon the law of insurance are concerned, they throw but little practical light upon the subject, and that of rather an obscure and doubtful character.

Arnold, 866, *et seq.*, lays down four rules as applicable to such cases :

1st. That *successive losses*, happening at different times, may be *coupled* together, to make up the full amount, but they must be losses arising from the perils insured against.

2nd. That *general* and *particular* average can not be added together to make up the rate per cent. required.

3d. "That expenses incurred for saving or preserving the cargo and freight, i.e., warehouse rent at an intermediate port, and expenses of unloading and reloading, can not be added to the damage in order to make it up to the required amount." For this he cites Stevens on Av. 5th ed. 230; Benecke on Indemnity, 472. The reason given is, that these expenses are not in the nature of a loss, but are charges incurred to preserve and bring forward the property. "The clause," he says, "only contemplates a loss, and that such a loss should arise from an accident. If, however, the loss, independently of these charges, exceeds the per centage, then the charges must be paid by the insurer."

4th. "That the expenses of ascertaining the amount of the loss can not be added to the damage to make up the required per centage." For this he cites 2 Phil. 509 (485), §1791. But that it is to be recovered if the rate per cent. is complete without it. Ibid.

Phillips, in his standard work on insurance, lays down

the first, second and fourth of Arnold's rules, §§1779, 1780, 1791, but wholly omits the third and most material one to the present inquiry. So far as he does allude to the third rule, it is to be inferred that he holds the law to be the other way, though he does not say so in terms. He asks, section 1779, " What damage or loss is to be included in making up the amount of loss?" and then answers : " General and particular average can not be included together, nor the cost of ascertaining the loss." But as to salvage, increased freights and other incidental charges, he is silent. If nothing but a direct loss of the thing itself were allowable, the mere statement of that proposition would have fully answered his inquiry, and left nothing to be said. In section 1790, Mr. Phillips asks the question whether the premium is to be included in the valuation of the property, in order to fix the rate per cent., and by way of answer, says : " If the loss is a part of the thing insured, it makes no difference whether the premium is or is not included in making the adjustment, for it must enter into the value of the part lost as well as of the whole property. But if the loss is in disbursements, the omission of the premium in estimating the value of the article, may have the effect of rendering the underwriters liable for a loss for which they would not be liable were the premium included." For which reason, he thinks, the most scientific mode of adjustment is to include the premium in estimating the value, and as being that referred to by the parties in fixing the rate per cent.

It will thus be seen that he considers the rule to be that disbursements on account of the property, to save it from peril, or further damage, are to be treated as a loss, in the making up of the requisite per centage.

Martin shows the propriety of this rule in a paragraph written for another purpose. He says, the warranty in the memorandum clause is " free from an average, i. e., loss, the terms being used synonymously, and not from sea-damage, and an average has always been made up with the extra charges. They form a part of the indemnity which the

assured always receives from the underwriters, and it is in reference to an average thus imposed, that he engages to exempt the underwriters, if it do not amount to five, or other rate, per cent." Martin on Average, 119; cites Phillips on Ins. §1791.

It is indemnity that the insured requires, not for the sea or river-damage alone done to his property, by a peril of the sea or river, but from loss upon his property, sustained by reason of a peril, however that loss may arise, whether by taking or destroying part of the property to save the residue, or expending money therefor.

Suppose, instead of $176 in money being expended to save the property, fifteen bales of the hay had been sacrificed instead, the loss would have been practically the same, and in the latter case, no doubt would be entertained of a recovery. The rule laid down by Arnold applies to what he terms expenses, or charges, merely to bring forward the property, as warehouse rent, unloading and reloading, but not, as I conceive to a charge for salvage, which is rather in the nature of a direct loss than of a mere charge to bring forward the property.

That the word loss or average, in this memorandum clause, is not confined to sea-damages, but extends to charges fixed upon the property by reason of the accident itself, appears from 1 Story, 463, *Peters* v. *The Warren Ins. Co.*; 3 Sumner, 389; 14 Pet. 99; 1 Blatchford, 251, *Sherwood* v. *Gen. Mut. Ins. Co.*, where it was held, in a case of collision, that the damage to the ship itself might be added to the damage which she was compelled to pay in a foreign port, by way of contributing to reimburse the injury done to the other vessel, to make up the requisite per cent. specified in the memorandum clause. Because the whole loss resulted from the same accident.

So, too, it is held, in that class of policies, where, to entitle the insured to recover, the loss must be total, that it is not necessary that the subject should be destroyed, or wholly lost. It is enough, if the injury to the property, added to the salvage, and expenses of saving and forwarding it, would be

equal to the whole value of the property upon arrival at the port of destination, including increased freight. 7 Eng. Law and Eq. 461, *Rosetto* v. *Gurney;* 4 Ib. 388, *Reimer* v. *Ringrose.* Lord Abinger, in 3 Bing. N. C. 266, *Roux* v. *Salvador,* says that the words *average* and *loss,* in the memorandum article, must be construed in the same sense as elsewhere in the policy, i. e., in their ordinary meaning; and Phillips, §1469, in describing a particular average loss, says: "Expense incurred on the cargo, or any part of it, in direct consequence of a peril insured against, is particular average (or loss) on the same." 1 Hall N. Y. 423, *Bridge* v. *Niagara Ins. Co.*

If these expenses may be regarded in the making up of a total loss, I do not see why they should not be regarded in estimating a partial one, so as to bring it up to the requisite per centage. For, in the latter case, the insurers might well be willing to pay these expenses, to save themselves from a total loss.

Much stress has been laid, by the defendant's counsel, upon a provision in this policy which requires the insured, in case of disaster, "to use all reasonable and proper means for the security, preservation, relief and recovery of the property insured; to the charges whereof the insurers engage to contribute, in proportion as the sum insured bears to the whole sum at risk," and which, it is said, was intended to provide for *all charges* incurred in the preservation and security of the property. So that these charges were not intended to be included under the term loss or average on the property. But we reply that the same, or a similar clause, is contained in all other policies that have not been held to exclude such charges from the estimate of either a total or a partial loss, or to limit the meaning of the word *loss,* restricting it, as would seem to be claimed, to sea-damage only; and, furthermore, if the intention of the parties is to be in any wise gathered from the terms of the instrument itself, then it would seem as if the word *loss* was used in this policy in its enlarged sense, as covering all losses arising directly from the

accidents insured against, and not merely injuries to the property itself. For in this very memorandum, in speaking of the losses, which, it is said, must amount to the requisite per cent., it expressly excludes "all charges and expenses incurred for the purpose of ascertaining and proving the loss." If other charges and expenses had been intended to be excluded from the estimate of the loss, they too would have been mentioned as more directly connected with it; and the fact of including some charges in this exception, and excluding others, shows that the word *loss* was not used in a limited sense, and would otherwise have been held to include the charges excepted. In 1 B. Munroe, 336, *Schultz, et al.* v. *The Ohio Ins. Co.*, which was in some respects similar to this, the question whether the expense of unloading the cargo from the steamboat should be added to the river-damage, in calculating the loss, with reference to this exception in the memorandum, was not considered, and therefore not decided; although it was alluded to. For, in that case, these two items, even with a reasonable extra freight added, did not amount to ten per cent., the sum required by the policy in that case; although, if the court had been by any means satisfied that such items should not be coupled together, it might have been saved a great deal of trouble in so deciding, without entering, as it did, into an elaborate inquiry into the question, whether extra freight could be allowed at all, and, if so, to what extent, and under what circumstances.

Since preparing the foregoing, I have fallen upon a case in 5 Ohio, 305, *Perry* v. *The Ohio Ins. Co.*, which seems to me fully to decide the principles we have had under consideration. That was the case of an insurance on a steamboat, against the perils of the river, for the period of four months, containing the usual clauses, "that in case of any loss or misfortune, it shall be lawful for the assured to sue, labor, and travel, for the defense, safeguard, and recovery of the vessel, or any part thereof; to the charges whereof the said insurance company will contribute according to the rate and quantity of the sum herein insured." "But no partial loss, or particular

average, shall, in any case, be paid, unless amounting to five per cent." It appears that on her way from Red River to New Orleans, the boat broke her shaft, in consequence of a peril insured against, and, being unable to proceed, was towed into the port of New Orleans by another boat, and repaired. The cost of refitting the shaft was less than five per cent., i. e., the direct injury. The cost of towing the boat into port, added to the injury, made up the requisite sum. It was held that these two items might be taken together in estimating the total loss, and so the plaintiff was allowed to recover. The circumstance of there being a clause in the policy allowing for these towage expenses as a distinct matter, did not alter the case.

Now, I do not see how it is possible to distinguish that case from the one before us. There, the cost of getting the boat into port for safety, and for repairs, was treated as part of the five per cent. loss provided for; why should not the extraordinary cost of getting the cargo into a place of safety, when it would otherwise be lost, be entitled to the same favor?

In view of this case, therefore, I have no further hesitancy in concluding that this charge for salvage must be allowed, and added to the damage to the hay, in estimating the plaintiff's loss, under this memorandum clause; and inasmuch as taken together, the whole loss amounts to twenty per cent., the plaintiffs are entitled to recover for it.

Judgment for plaintiffs.